In re Krispy Kreme Doughnuts, Inc. S'holder Litig., 2018 NCBC 1.

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16-CVS-3669 (Master File); 16-CVS-3651;
16-CVS-3239; 16-CVS-3102; 16-CVS-3101

In re Krispy Kreme Doughnuts, Inc.
Shareholder Litigation

## ORDER & OPINION ON PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT

1.　THIS MATTER is before the Court on Plaintiffs' Motion for Final Approval of Settlement ("Motion for Settlement Approval").

2.　For the reasons discussed below, the Court RESERVES and retains jurisdiction to rule on a pending request for a fee award, CERTIFIES a Settlement Class as defined below, APPROVES the Settlement, and DISMISSES all class claims with prejudice.

*Levi & Korsinsky LLP, by Donald J. Enright (pro hac vice), and Ward Black Law, by Janet W. Black, Nancy R. Meyers, and Megan E. Kunz, for Plaintiffs Ronnie Stillwell, Patricia Horton, Barbara Grajzl, Stuart Bonnin and Melissa Weers.*

*Womble Bond Dickson (US) LLP, by Ronald R. Davis and Brent F. Powell, and Simpson Thacher & Bartlett LLP, by Peter E. Kazanoff (pro hac vice) and Craig S. Waldman (pro hac vice), for Defendants Krispy Kreme Doughnuts, Inc., Tim E. Bentsen, Charles Blixt, Lynn Crump-Caine, Carl E. Lee, Jr., C. Stephen Lynn, Robert S. McCoy, Jr., James H. Morgan, Andrew J. Schindler, Lizanne Thomas, and Tony Thompson.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Clifton L. Brinson and Donald H. Tucker, and Skadden, Arps, Slate, Meagher, & Flom LLP, by Paul J. Lockwood (pro hac vice), Joseph O. Larkin (pro hac vice), and Alyssa S. O'Connell (pro hac vice), for Defendants Cotton Parent Inc. and Cotton Merger Sub Inc..*

Gale, Chief Judge.

## I.     NATURE OF THE DISPUTE AND PROCEDURAL HISTORY

3.     Stuart Bonnin, Barbara Grajzl, Patricia Horton, Ronnie Stillwell, Melissa Weers, James Graham, Jonnie Lomax, and Harold Lomax (collectively, "Plaintiffs") are former Krispy Kreme shareholders.

4.     On May 9, 2016, Krispy Kreme Doughnuts, Inc. ("Krispy Kreme") and JAB Beech, Inc. ("JAB") announced a transaction by which JAB would purchase Krispy Kreme for $21.00 per share in cash (the "Merger").

5.     Between May 26, 2016, and July 8, 2016, Plaintiffs filed seven putative class-action lawsuits against Krispy Kreme board members Tim Bentsen, Charles Blixt, Lynn Crump-Caine, Carl Lee, Jr., C. Stephen Lynn, Robert McCoy, Jr., James Morgan, Andrew Schindler, Lizanne Thomas, and Tony Thompson (collectively, the "Individual Board Members") and JAB, Krispy Kreme, JAB Holding Company, JAB Holdings B.V., Cotton Parent Inc., and Cotton Merger Sub, Inc. (collectively with Individual Board Members, "Defendants").  Five of those suits were brought in the North Carolina Superior Court—*Bonnin v. Bentsen*, No. 16-CVS-3651; *Grajzl v. Krispy Kreme Doughnuts, Inc.*, No. 16-CVS-3239; *Horton v. Krispy Kreme Doughnuts, Inc.*, No. 16-CVS-3102; *Stillwell v. Bentsen*, No. 16-CVS-3101; and *Weers v. Bentsten*, No. 16-CVS-3669 (collectively, the "State Actions").  Between June 6, 2016 and July 6, 2016, the State Actions were individually designated as complex business cases by order of the Chief Justice of the Supreme Court of North Carolina and then assigned to the undersigned.

6. The two other suits were brought in the United States District Court for the Middle District of North Carolina, *Graham v. Bentsen*, No. 1:16-cv-00612 (filed June 13, 2016) and *Lomax v. Krispy Kreme Doughnuts, Inc.*, No. 1:16-cv-00923 (filed July 8, 2016) (the "Federal Actions" and collectively with the State Actions, the "Litigation").

7. On July 11, 2016, the Court consolidated the State Actions ("Consolidated Action"), designating *Weers v. Bentsen*, No. 16-CVS-3669 as the lead action with the operative complaint.

8. Collectively, the suits asserted direct and derivative claims that (1) the Individual Board Members breached their fiduciary duties when, on May 31 and June 27, 2016, they issued a preliminary proxy statement and a definitive proxy statement (collectively, "Proxy Statements") to the United States Securities and Exchange Commission ("SEC") that allegedly omitted material information, (Compl. ¶ 5, ECF No. 1), and (2) JAB had aided and abetted the Individual Board Members in breaching their fiduciary duties (Compl. ¶¶ 92–99, 106–111).

9. On July 14, 2016, Plaintiffs filed a motion for preliminary injunction, seeking to enjoin any shareholder meeting to approve the Merger until appropriate supplemental disclosures were made.

10. On July 15, 2016, the named Plaintiffs in the State Actions and Federal Actions entered into a Memorandum of Understanding ("MOU") to settle all of the actions based on Defendants' agreement to provide supplemental disclosures prior to a shareholder vote (the "Settlement"). That same day, Krispy Kreme filed a Form 8-

K with the SEC to supplement its Proxy Statements (the "Supplemental Disclosures").

11. Krispy Kreme's shareholders voted to approve the Merger during a special shareholder meeting on July 27, 2016 ("Shareholder Vote"). Approximately 79% of outstanding shares voted, and of those voting, 95% voted in favor of the Merger.

12. Class counsel conducted confirmatory discovery following the Shareholder Vote.

13. On June 20, 2017, Plaintiffs submitted a Stipulation and Agreement of Compromise, Settlement and Release (together with exhibits, the "Stipulation").

14. On July 11, 2017, Plaintiffs filed their Motion for Preliminary Approval of Settlement.

15. On July 13, 2017, the Court entered its Order Preliminarily Approving Settlement and Certifying Class and Scheduling Order ("Order Preliminarily Approving Settlement"), which: (1) preliminarily certified a class action pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, solely for the purpose of effecting the Settlement and subject to a hearing to further address the fairness, reasonableness, and adequacy of the Settlement ("Settlement Hearing"); and (2) approved the form and method of notice ("Notice") described in the Order Preliminarily Approving Settlement.

16. On October 23, 2017, Plaintiffs in the State Court Actions filed the Motion for Settlement Approval. (*See generally*, Pls.' Mot. Final Approval Settlement, ECF No. 47.)

17. On October 30, 2017, a member of the proposed settlement class, James Snyder ("Mr. Snyder" or "Objector"), filed his Submission of Objections and Notification to Appear at Settlement Hearing ("Objection"). (*See generally*, Submission Objections & Notification Appear at Settlement Hearing By Class Member James Snyder, ECF No. 51.)

18. On December 5, 2017, the Court conducted the Settlement Hearing, at which class counsel, Objector, and counsel for Defendants appeared and responded to the Court's questions. At that hearing, the Court indicated that it would separately consider the Motion for Settlement Approval and reserve consideration of class counsel's request for attorneys' fees and expenses pending further submissions.

19. The Court received an affidavit certifying that, as of October 27, 2017, 64,726 copies of the Notice approved by the Court in its Order Preliminarily Approving Settlement were mailed to Class Members and nominees. (Aff. Service Notice Pendency Class Action, Class Action Determination, Proposed Settlement Class Action, Settlement Hearing, Right to Appear 3, ECF No. 50.)

20. The Court was further advised that no member of the proposed class other than Mr. Snyder had filed any objection to the Settlement. No member of the proposed class other than Mr. Snyder appeared at the Settlement Hearing.

## II. CLASS CERTIFICATION AND SETTLEMENT APPROVAL

### A.     A Settlement Class Should be Certified.

21.     The Motion for Settlement Approval requests and the Settlement contemplates that the Court will certify a settlement class for purposes of the Settlement only, pursuant to Rule 23 of the North Carolina Rules of Civil Procedure ("Rule 23").

22.     Rule 23 allows North Carolina trial courts to certify a class action if it finds that each of the following requirements are met:

> (1) the existence of a class, (2) . . . the named representative will fairly and adequately represent the interests of all class members, (3) . . . there is no conflict of interest between the representative and class members, (4) . . . class members outside the jurisdiction will be adequately represented, (5) . . . the named party has a genuine personal interest in the outcome of the litigation, (6) . . . class members are so numerous that it is impractical to bring them all before the court, (7) . . . adequate notice of the class action is given to class members.

*In re PokerTek Merger Litig.*, No. 14 CVS 10579, 2015 NCBC LEXIS 10, at *9 (N.C. Super. Ct. Jan. 22, 2015) (quoting *Ehrenhaus v. Baker*, Order No. 08 CVS 22632 ¶ 39 (N.C. Super. Ct. Feb 5, 2010) (alteration in original); *see also* N.C. Gen. Stat. § 1A-1, Rule 23 (2015).

23.     "[A] 'class' exists . . . when the named and unnamed members each have an interest in either the issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 280, 354 S.E.2d 459, 464 (1987).

24. Provided that the above requirements above are met, this Court has regularly acknowledged its broad discretion in considering class certification. *See, e.g., In re Newbridge Bancorp S'holder Litig.*, No. 15 CVS 9251, 2016 NCBC LEXIS 91, at \*15 (N.C. Super. Ct. Nov. 22, 2016.); *In re Harris Teeter Merger Litig.*, No. 13 CVS 12579, 2014 NCBC LEXIS 47, at \*8 (N.C. Super. Ct. Sept. 24, 2014).

25. Having thoroughly considered the materials of record, the Court finds and concludes that the requirements of Rule 23 have been met and that it should, in its discretion, certify a settlement class ("Settlement Class"). Specifically, the Court finds and concludes that: the named and unnamed members of the Settlement Class have a common interest in the same issues of law and fact; the claims of the individual representatives who brought the State Actions and the Federal Actions are typical of the members of the proposed class; these individual representatives each have a genuine personal interest in the Litigation; there is no apparent conflict of interest between these representatives and any unnamed member of the proposed class; these representatives can adequately represent and have adequately represented unnamed members of the proposed class, both within and without North Carolina; the common issues presented in the Litigation predominate over any issues that might only affect members individually; the number of members of the proposed class are so numerous that joining them individually is impractical; the Litigation seeks relief, including injunctive relief, that is common to all members of the proposed class; the Notice provided to putative class members afforded adequate due process to putative class members and was appropriate, the best notice practicable under the circumstances,

and otherwise in full accord with all substantive and procedural requirements imposed by law; and a class action is the efficient, practical, and superior method for proceeding.

26. Accordingly, in its discretion, the Court, solely for purposes of effectuating the Settlement, certifies the following non-opt out Settlement Class, defined as:

> any and all record holders and beneficial owners of common stock of Krispy Kreme who held or owned such stock at any time during the period beginning on and including October 6, 2015 through and including July 27, 2016 (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns (the "Class"). Excluded from the Class are Defendants and their immediate family members, any entity in which any Defendant has a controlling interest, and any successors-in-interest thereto.

27. The Court appoints Plaintiffs Bonnin and Weers as the Class Representatives, Rigrodsky & Long, P.A. and Levi & Korsinsky LLP as Co-Lead Counsel for the Class, and Ward Black Law as Liaison Counsel for the Class (Co-Lead Counsel and Liaison Counsel, collectively, "Class Counsel").

**B. The Court Defers Ruling on Class Counsel's Request for the Award of Attorneys' Fees.**

28. Neither the Settlement nor the Court's approval of the Settlement depends upon the Court approving any award of attorneys' fees to Class Counsel. (Stipulation and Agreement of Compromise, Settlement and Release 16, ECF No. 44 (noting that Court approval of the Settlement is "expressly not conditioned on" the

Court's approval of attorneys' fees)); (Pls.' Mem. L. Supp. Mot. Approval Attorneys' Fees & Expenses 4, ECF No. 49 ("Resolution of the fee petition shall not be a precondition to the Settlement.").)

29.     Mr. Snyder stated in his Objection, and confirmed during his presentation at the Settlement Hearing, that he objects to the award of any attorneys' fees to Class Counsel but does not otherwise object to the Settlement or settlement terms.

30.     The Court has determined that Class Counsel has not yet submitted all information necessary for the Court to determine whether to award any attorneys' fees.

31.     The Court, in its discretion, reserves determination of the fee request and proceeds to consider the fairness, reasonableness, and adequacy of the Settlement, which is independent of the Court's review of any award of costs and fees.

## C.     **The Settlement Is Fair, Reasonable and Adequate.**

### (1)     **The Court's review is based on a balance of the "get" and the "give" of the Settlement terms.**

32.     As a general proposition, North Carolina courts favor settlement over litigation. *See In re Progress Energy S'holder Litig.*, No. 11 CVS 739, 2011 NCBC LEXIS 45, at *17 (N.C. Super Ct. Nov. 29, 2011) ("Settlement has long been preferred to litigation, and public policy prefers upholding good faith settlements, even without strong regard to the consideration underlying the settlement."). However, Rule 23 requires court approval of any class settlement, recognizing that class settlements present particular due process considerations because they bind individuals not

before the court. *Ehrenhaus v. Baker*, 216 N.C. App. 59, 72, 717 S.E.2d 9, 19 (2011) ("*Ehrenhaus I*"). Courts nevertheless have favored settlement of class actions provided that a court determines that there has been fair notice, an opportunity for class members to object, and that the settlement terms are fair, reasonable, and adequate. *Id.*

33. The Court considers various factors when determining whether a proposed class settlement is fair, adequate, and reasonable, including:

> (a) the strength of the plaintiff's case, (b) the defendant's ability to pay, (c) the complexity and cost of further litigation, (d) the amount of opposition to the settlement, (e) class members' reaction to the proposed settlement, (f) counsel's opinion, and (g) the stage of the proceedings and how much discovery has been completed.

*In re Newbridge Bancorp S'holder Litig.*, 2016 NCBC LEXIS 91, at *21–22 (citing *Ehrenhaus I*, 216 N.C. App. at 73–75, 717 S.E.2d at 19–20).

34. A court may be particularly vigilant in its inquiry where a proposed settlement yields substantial rewards for class counsel without any corresponding monetary benefit to class members. Judge Ben F. Tennille of this Court coined the phrase "stinky fees" to refer to such a fee award that is wholly disproportionate to any class benefit. Order at 1, *Ward v. Lance, Inc.*, No. 10 CVS 16553 (N.C. Super. Ct. Feb. 28, 2011), ECF No. 22; *see also Moody v. Sears, Roebuck & Co.*, No. 2 CVS 4892, 2007 NCBC LEXIS 11, at *38, 48 (N.C. Super. Ct. May 7, 2007) (explaining that "when a class action is filed in this state, the courts of this state have a duty to see that even nationwide settlements meet the standards of due process and fundamental fairness," which requires being critical of "vast dispari[ties] between what the class

received and the fee accorded to class counsel"), *rev'd on other grounds*, 191 N.C. App. 256 (2008).

35.    In recent years, the number of class actions challenging corporate mergers has dramatically increased, as have the number of class actions settled without the payment of monetary consideration to the class.    Courts have increasingly questioned the fairness of such settlements, most of which involve the selling company's supplemental disclosures prior to a shareholder vote, a broad release of class claims, and a request that class counsel be awarded substantial fees, but no monetary consideration.    This trend—the filing of an action promptly after a merger announcement followed shortly by a disclosure-based settlement with a request for substantial attorneys' fees—has been particularly noteworthy in Delaware, and the Delaware Court of Chancery has been regularly asked to approve such settlements.

36.    In 2016, Delaware Chancery Court Chancellor Andre G. Bouchard authored his seminal opinion, *In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884 (Del. Ch. Jan. 22, 2016), adopting a standard of enhanced scrutiny for disclosure-based settlements.    Chancellor Bouchard noted that disclosure-based settlements increasingly included marginally relevant supplemental disclosures and broad, far-reaching releases, so that there was an unreasonable imbalance between the "give" and the "get" of the class settlement.    *Id.* at 898.    Concerned with this trend, Chancellor Bouchard  accordingly stated in *Trulia* that:

> [P]ractitioners should expect that disclosure settlements are likely to be
> met with continued disfavor in the future unless the supplemental

disclosures address a plainly material misrepresentation or omission, and the subject matter of the proposed release is narrowly circumscribed to encompass nothing more than disclosure claims and fiduciary duty claims concerning the sale process, if the record shows that such claims have been investigated sufficiently.

*Id.*

37. While *Trulia* heralded an enhanced court scrutiny, it did not forecast that supplemental disclosures would always be found immaterial or lacking substantial value, nor did it hold that the Delaware courts will always reject disclosure-only settlements. In fact, the Delaware Court of Chancery has approved disclosure-based class settlements since *Trulia*. *See In re BTU Int'l Stockholders Litig.*, No. 10310-CB, 2016 Del. Ch. LEXIS 212, at *4 (Del. Ch. Feb. 18, 2016).

38. Notably, Chancellor Bouchard recognized that efforts of class counsel in securing supplemental disclosures may have value, but that a trial court is often ill-equipped to quantify that value through a traditional fairness hearing because defense counsel favors the proposed settlement and no longer has an incentive to challenge class counsel. *Trulia*, 129 A.3d at 893. In those situations, the Delaware Court of Chancery favors resolving any fee award to class counsel through what it refers to as a "mootness dismissal" procedure. *Id.* at 897. Under this approach, the selling company issues supplemental disclosures, the class representative dismisses the class action with a release that binds only the named plaintiff, and class counsel applies for a fee award based on efforts to secure the supplemental disclosures. *Id.* at 897–98. This procedure allows corporate counsel to advocate without fear of

jeopardizing the settlement. North Carolina, however, has not expressly adopted such a process or procedure.

39. The North Carolina Business Court has been called upon to address *Trulia* and its application to disclosure-based settlements. Within days of *Trulia*'s publication, this Court was asked to adopt *Trulia* to reject a disclosure-based class settlement in *Corwin v. British Am. Tobacco PLC*, 14 CVS 8130, 2016 NCBC LEXIS 14, at *10–12, (N.C. Super. Ct. Feb. 17, 2016). Significantly, the settlement at issue in *Corwin* was only a partial settlement by which the class reserved pricing claims. *Id.* at 13. In addressing *Trulia*, the Court noted that considering how *Trulia* might apply in future litigation would require the Court to consider potentially significant differences in Delaware and North Carolina law, including, but not limited to, differences arising from Delaware's adoption, and North Carolina's rejection, of the common benefit doctrine. *Id.* at 11–12.[1]

40. Judge Louis A. Bledsoe of this Court has also considered the application of *Trulia* to a settlement negotiated before *Trulia* was published. Judge Bledsoe stated that "[i]n the absence of contrary instructions from the North Carolina appellate courts, the Court finds the recent trend in the Delaware case law requiring enhanced scrutiny of disclosure-based settlements to merit careful consideration for potential application in this State." *In re Newbridge Bancorp S'holder Litig.*, 2016

---

[1] This Court had previously observed in connection with another merger litigation that it was unsettled under North Carolina law whether settling parties had the authority to agree to the payment of attorneys' fees as a part of a class settlement. *In re Harris Teeter Merger Litig.*, 2014 NCBC LEXIS 47, at *22–23. The North Carolina Court of Appeals has since recognized that authority, *Ehrenhaus v. Baker*, 243 N.C. App. 17, 30, 776 S.E.2d 699, 708 (2015) ("*Ehrenhaus II*"), but the Supreme Court of North Carolina has not yet considered the issue.

NCBC LEXIS 91 at * 3–4. He proceeded to "expressly advise[] the practicing bar that judges of the North Carolina Business Court . . . may be prepared to apply enhanced scrutiny of the sort exercised in *Trulia* to the approval of disclosure-based settlements and attendant motions for attorneys' fees." *Id.* at *4. Judge Bledsoe forecasted that such consideration would include a careful examination of the "give" and the "get" of the class settlement. *Id.* at *22.

41. It remains uncertain whether North Carolina's standard for awarding attorneys' fees will allow for the "mootness dismissal" procedure followed in Delaware. A trial court may be limited to considering the issue of attorneys' fees only when the parties agree to a fee award that the court then evaluates as part of its overall fairness inquiry. Even so, it is clear that where the terms of a class settlement are not conditioned on the trial court's award of attorneys' fees to class counsel, the trial court may uncouple its review of the substantive settlement terms from its consideration of a request for fees. The court may then conduct separate inquiries as to the "give" and the "get" for each.

42. Outside the class context, trial courts have traditionally been cautioned that their role is to examine only the existence of consideration, not its adequacy. *See, e.g.*, *Hejl v. Hood, Hargett & Assocs., Inc.*, 196 N.C. App. 299, 305, 674 S.E.2d 425, 428–29 (2009) (quoting *Mach. Co. v. Ins. Co.*, 13 N.C. App. 85, 90–91, 185 S.E.2d 308, 311–12 (1971)) ("The slightest consideration is sufficient to support the most onerous obligation, the inadequacy, . . . is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced."). That said, due

process considerations plainly require more searching court inquiry into the adequacy of the consideration in the class context to guard against "sweetheart deals" that are contrary to the interest of a class who was not fairly represented by counsel at the settlement table. *Ehrenhaus I,* 216 N.C. App. at 72, 717 S.Ed.2d at 19 (citing *In re Agent Orange Prod. Liab. Litig.,* 597 F.Supp. 740, 758 (E.D.N.Y.1984).

43. When considering the fairness, reasonableness, and adequacy of the substantive settlement terms, the "get" is the value of the supplemental disclosures and the "give" is the scope of the release encompassed by the settlement. When considering the fee request, the "give" becomes the amount to be paid to class counsel.

44. When conducting its balancing inquiry as to the fairness, reasonableness, and adequacy of the substantive settlement terms, the Court continues to be guided, at least in part, by the long-standing judicial preference for settlement rather than extended litigation. The Court must also be careful not to simply substitute its own judgment for that of competent litigation counsel that negotiated the settlement terms at arm's length. Nevertheless, the Court must remain vigilant to guard against settlements based on inadequate class representation and settlements reached through collusion that benefit only non-class members.

45. The consideration of these various factors in a disclosure-based settlement begins with an inquiry as to whether the scope of the release extends beyond disclosure-related claims and therefore beyond the consideration given in

exchange for the release. To that degree, this Court is fully in accord with *Trulia*'s enhanced scrutiny to determine whether the release is narrowly circumscribed.

46. As the scope of the release narrows, however, the Court's inquiry as to the materiality of supplemental disclosures and their adequacy to support the release tends to a more traditional settlement inquiry where the judgment of competent counsel is accorded significant weight. *Cf. Ehrenhaus I*, 216 N.C. App. at 72, 74, 717 S.E.2d at 19–20 (noting that the judicial "preference for settlement applies to class actions" and that "the opinion of counsel is . . . a relevant factor" in determining whether to approve a settlement). The Court must still engage in its fairness inquiry and satisfy itself that the supplemental disclosures are "material" as that term has been defined by North Carolina's appellate courts, while at the same time resisting a reflexive rejection of a class settlement on grounds of immateriality or insufficient consideration.

47. Unless the value of the supplemental disclosures are plainly disproportionate to the scope of the proffered release, trial courts most often are less well-equipped to measure a disclosure's worth than are competent and experienced counsel. In contrast, trial courts are generally well-equipped to conduct a reasoned inquiry into whether a fee award is reasonably related to the degree to which supplemental disclosures significantly added to the information that was otherwise already available to shareholders. Indeed, the factors North Carolina trial courts are to consider in engaging in such an analysis are well-established by North Carolina's

Revised Rules of Professional Conduct.  *See* N.C. Rev. R. Prof. Conduct 1.5(a)(4).  *See also Ehrenhaus I*, 216 N.C. App. 59, 96, 717 S.E.2d 9, 33 (2011).

48.     In sum, the Court must examine the materiality of any supplemental disclosures and find that they provide reasonable consideration for the class release.  But where there is little or no opposition by class members, the Court is reluctant to set aside a fair arm's length settlement negotiated between competent counsel if the disclosures are not plainly immaterial and the release is reasonable.  The Court is less reluctant to exercise a more searching inquiry when deciding upon a fee request that does not depend on the validity of the settlement.

**(2)     The Supplemental Disclosures are Fair and Adequate Consideration for the Class Release.**

49.     In *Ehrenhaus I*, the Supreme Court of North Carolina adopted the standard of materiality set out by the United States Supreme Court in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976).  216 N.C. App. at 88, 717 S.E.2d at 28–29.  In *TSC Industries*, the United States Supreme Court held that:

> [a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. . . . It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Id.* at 449.

50.     The Supplemental Disclosures on which the Settlement is based fall into four primary areas: (1) the unlevered cash flows used in the financial advisor's discounted cash flow ("DCH") analysis; (2) Krispy Kreme's management's considerations regarding their potential post-Merger employment; (3) the financial advisor's potential conflict of interest; and (4) metrics used to evaluate comparable companies.

51.     The Proxy Statements stated that "Wells Fargo Securities performed a discounted cash flow analysis of [Krispy Kreme] by calculating the estimated net present value of the projected unlevered, after-tax free cash flows of [Krispy Kreme] based on financial projections" but did not disclose Krispy Kreme's specific projected unlevered after-tax free cash flows Wells Fargo used in its DCF analysis. (Pls.' Mem. L. Supp. Mot. Final Approval Settlement 13, ECF No. 48.)  The Supplemental Disclosures included the specific projected unlevered, after-tax free cash flows of Krispy Kreme for the remainder of 2017 and for the fiscal years 2018 through 2023, as derived from the financial projections provided to Wells Fargo by Krispy Kreme management.  (Pls.' Mem. L. Supp. Mot. Final Approval Settlement 13.)  Regarding the DCF analysis, the Supplemental Disclosures included information relating to Wells Fargo's basis for selecting the range of perpetuity growth rates and discount ranges that Wells Fargo used.  (Pls.' Mem. L. Supp. Mot. Final Approval Settlement 16–17.)

52.     The Supplemental Disclosures also contained information regarding potential conflicts of interest of Krispy Kreme's management and Wells Fargo.  The

Proxy Statements did not state that the Krispy Kreme board had discussed post-Merger employment opportunities at the inception of merger negotiations. The Supplemental Disclosures included information that Krispy Kreme board members, in preliminary discussions about a potential merger on November 23, 2015, discussed JAB's "history of managing its portfolio companies for long-term growth and relying on company management to run the business." (Pls.' Mem. L. Supp. Mot. Final Approval Settlement, Ex. 3.) The Supplemental Disclosures also stated that, during the preceding two years, Wells Fargo had received about $300,000 from Krispy Kreme for investment banking services, and approximately $1,000,000 from a JAB affiliate in connection with corporate loans. (Pls.' Mem. L. Supp. Mot. Final Approval Settlement, Ex. 3.)

53. Finally, the Supplemental Disclosures also included various inputs on Wells Fargo's Selected Companies Analysis, Selected Transactions Analysis, and DCF Analysis. Regarding the Selected Company and Selected Transactions analyses, the Supplemental Disclosures included "various individual multiples and financial metrics underlying Wells Fargo's analyses." (Pls.' Mem. L. Supp. Mot. Final Approval Settlement 17.)

54. The release contained in the Stipulation ("Release") releases claims that are based on "ownership of [Krispy Kreme] stock" between October 6, 2015 and July 27, 2016 and which relate to (1) the Merger agreement, (2) the consideration received by class members, (3) the Shareholder Vote, and (4) any allegations filed in any of the complaints in the State Actions or the Federal Actions. (Stipulation at 11–13.) The

Release does not include claims "under federal or state law that do not in any respect arise out of, or do not relate to, the [Merger] or the Shareholder Vote." (Stipulation at 11–13.) As a practical matter, the Release is not significantly broader than the effect of the Shareholder Vote.

55. The Court finds and concludes that the Supplemental Disclosures are sufficiently material to serve as consideration for the Settlement, and that their value is fair and reasonable in consideration of the scope of the Release.

56. Courts have recognized disclosures of underlying metrics required to understand a DCF analysis as material to a shareholder's consideration of a vote on the proposed transaction. *See In re Netsmart Techs. Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007). That said, generally the selling company is not required to disclose every single detail used during the analysis or necessary to allow the shareholder to complete the analysis independently. *Trulia*, 129 A.3d at 900 ("A fair summary, however, is a *summary*. By definition, it need not contain all information underlying the financial advisor's opinion or contained in its report to the board."). Courts generally inquire whether the new information significantly affects the "total mix of information" available to the shareholder. *TSC Industries,* 426 U.S. at 449.

57. Objector contends that any additional information added by the Supplemental Disclosures was insignificant, although he does not contend that the Settlement is not supported by consideration, his primary objective being to deny Class Counsel a fee award. (Submission Objections & Notification to Appear at Settlement Hearing By Class Member James Snyder 1).

58. Counsel for both the class and Krispy Kreme have explained that while the Proxy Statements described the financial advisor's DCF analysis, the specific unlevered cash flows described in the Proxy Statements were not the cash flows used in the financial advisor's actual calculation. Rather, the financial advisor conducted its DCF analysis based on the assumption that several of Krispy Kreme's corporate stores would be sold, yielding an increased unlevered cash flow. Counsel acknowledged that while the differences may be slight in any particular year, the differences over time have greater significance. While Defendants do not concede that they breached their fiduciary duties when issuing the Proxy Statements, they do not challenge that Class Counsel presents a reasoned argument that some shareholders might have found the Supplemental Disclosures to be material.

59. The Court finds and concludes that the Supplemental Disclosure regarding the DCF analysis was material. The Court also concludes that the additional disclosures were consideration for the Release, but to a lesser extent. Accordingly, the Court finds and concludes that the Settlement is supported by valuable consideration and that the terms of Settlement are fair, reasonable, and adequate.

60. The Court has further considered the various *Ehrenhaus* factors and concludes that they support approving the Settlement. The Defendants' ability to pay is not a consideration on the facts of this case. The Shareholder Vote and the opinion of counsel weigh heavily in favor of court approval. The record does not suggest that shareholders have a meritorious claim that the Merger was not based

on a fair price and reached through a fair process. There is no basis to suspect that the Settlement was reached through collusion, and, to the contrary, it appears that it was reached at arm's length between competent counsel. Counsel for the parties on both sides include some of the most prominent national firms well experienced in litigation of a similar nature, further suggesting that court approval is appropriate. *See, e.g., Ehrenhaus I*, 216 N.C. App. at 93, 717 S.E.2d at 31 (quoting *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y.) (alteration in original) ("[T]he opinion of experienced and informed counsel is entitled to considerable weight."); *In re Harris Teeter Merger Litig.*, 2014 NCBC LEXIS 47, at \*13 (approving a disclosure-based settlement after noting that counsel was "substantially experienced in comparable litigation both in North Carolina and before the Delaware Chancery Court").

## III.   CONCLUSION

61.   Based on the above findings and conclusions, the Court finds the Settlement to be fair, reasonable, adequate, and in the best interests of the Class, and it is hereby APPROVED. The parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions, and the Clerk is directed to enter and docket this Order and Final Judgment in the Consolidated Action, and the actions that comprise the Consolidated Action.

62.   This Order and Final Judgment shall not constitute any evidence or admission by any of the parties herein that any acts of wrongdoing have been committed by any of the parties to the Consolidated Action (or the actions that

comprise the Consolidated Action) and should not be deemed to create any inference that there is any liability therefor.

63. The Consolidated Action and the actions that comprise the Consolidated Action are hereby DISMISSED WITH PREJUDICE in their entirety on the merits and, except as provided in the Stipulation, without fees, costs, and expenses beyond those approved herein and with the understanding that this dismissal shall not affect or preclude the Court's further consideration of Class Counsel's request for a fee award.

64. This Order and Final Judgment provides for the full and complete discharge, dismissal with prejudice, settlement and release of, and a permanent injunction barring, any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, except as may be awarded in connection with class counsel's pending request for an award of fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, that Plaintiffs or any or all other members of the Class ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, based on his, her, or its ownership of Krispy Kreme common stock during the Class Period, against any of the Released Parties (as

defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule (including, but not limited to, any claims under federal securities laws or state disclosure law or any claims that could be asserted derivatively on behalf of Krispy Kreme), which, now or hereafter, are based upon, arise out of, relate in any way to, or involve, directly or indirectly, any of the actions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any series thereof, that were or could have been alleged, asserted, set forth, claimed, embraced, involved, or referred to in, or related to, directly or indirectly, the State Actions or the Federal Actions, or the subject matter thereof in any court, tribunal, forum or proceeding, including, without limitation, any and all claims that are based upon, arise out of, relate in any way to, or involve, directly or indirectly, (i) the Merger (or any amendment thereto), (ii) the consideration received by Class members in connection with the Merger, or the consideration received by any other person in connection with the Merger, (iii) the Shareholder Vote, including any disclosures or statements relating to the Merger in the Proxy Statements, or any other disclosures or statements relating to the Merger, or (iv) any of the allegations in any complaint or amendment(s) thereto filed in the Litigation (collectively, the "Released Claims"); provided, however, for the avoidance of doubt, nothing in this release intends for Released Claims to include (x) the right to enforce the Stipulation, or (y) claims under federal or state law that do not in any respect arise out of, or do not relate to, the Merger or the Shareholder Vote.

65. Defendants release Plaintiffs and Plaintiffs' counsel from all claims, complaints, petitions, liabilities, or sanctions arising out of the investigation, commencement, prosecution, settlement, or resolution of their respective actions, and shall be barred from asserting same; provided, however, that such releases will not include a release of the right to enforce the Stipulation or the Settlement.

66. Whether or not each or all of the following persons or entities were named, served with process, or appeared in the Litigation, "Released Parties" means Krispy Kreme, Tim E. Bentsen, Charles A. Blixt, Lynn Crump-Caine, Carl E. Lee, Jr., C. Stephen Lynn, Robert S. McCoy, Jr., James H. Morgan, Andrew J. Schindler, Lizanne Thomas, Tony Thompson, JAB, JAB Holding Company, JAB Holdings B.V., Cotton Parent, Inc. and Cotton Merger Sub, Inc., and each of their respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, shareholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or

legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, of each and all of the foregoing.

67. Any party providing a release (a "Releasing Person") has waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of any state, federal, or foreign law or principle of common law, which may have the effect of limiting the releases set forth above. Plaintiffs acknowledge, and the members of the Class shall be deemed by operation of the entry this Order and Final Judgment approving the Settlement to have acknowledged, that the foregoing waiver was separately bargained for, is an integral element of the Settlement, and was relied upon by each and all of the Defendants in entering into the Settlement.

68. The fact of and provisions contained in the Stipulation, and all negotiations, discussions, actions, and proceedings in connection with the Stipulation, shall not be deemed or constitute a presumption, concession or an admission by any party in the Consolidated Action, any signatory thereof or any Released Parties of any fault, liability, or wrongdoing or lack of any fault, liability, or wrongdoing, as to any facts or claims alleged or asserted in the Consolidated Action, or any other actions or proceedings, and shall not be interpreted, construed, deemed, involved, invoked, offered, or received in evidence or otherwise used by any person in the Consolidated Action or any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Stipulation. The Released Parties may file the Stipulation and/or this Order and Final Judgment in any action that may be brought against them in order to support

a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

69. The Court retains jurisdiction for the purposes of its further consideration of Class Counsel's request for the award of fees and expenses and, as necessary, to enforce this Order or the Stipulation.

IT IS SO ORDERED, this the 2nd day of January, 2018.

/s/ James L. Gale
James L. Gale
Chief Business Court Judge